Clerks Copy

FILED
U.S. DISTRICT COURT
ALBUQUERQUE, NEW MEXICO
APR 27 1999
CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**EDWARD T. McBRIDE,**

    **Plaintiff,**

v.                                     CIVIL NO. 98-CV-1211 JP/WWD

**THE COUNTY OF BERNALILLO,
BERNALILLO COUNTY SHERIFF'S DEPARTMENT
AND SHERIFF JOE BOWDICH, individually and in his
official capacity.**

    **Defendants.**

## MEMORANDUM OPINION AND ORDER

On November 23, 1998, Defendants The County of Bernalillo, Sheriff Joe Bowdich, individually and in his official capacity, and the Bernalillo County Sheriff's Department ("Defendants") filed "Defendants' Motion to Dismiss" **[Doc. No. 5]**. The Defendants request dismissal under Fed. R. Civ. P. 12(b)(6) of Plaintiff Edward T. McBride's ("McBride") claims based on the Age Discrimination Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621-624, for compensatory damages, punitive damages and interest; McBride's state law tort claims based on the New Mexico Tort Claims Act ("NMTCA"), NMSA 1978, § 41-4-1, et seq., for wrongful termination, hostile work environment and intentional infliction of emotional distress; and McBride's claims against the Bernalillo County Sheriff's Department ("BCSD") and Sheriff Bowdich, individually. After thoroughly reviewing the briefs and the applicable case law, I conclude that the Defendants' Motion to Dismiss should be **GRANTED** in part and **DENIED** in part.

**LEGAL STANDARD**

The Defendants' motion to dismiss for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6) should be denied "unless it appears beyond doubt that [McBride] can prove no set of facts in support of his claim which would entitle him to relief." See Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Through their 12(b)(6) motion, the Defendants may test whether, as a matter of law, McBride "is entitled to legal relief even if everything alleged in the complaint is true." See Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993). Thus, in deciding the Defendants' motion, I must presume that all of McBride's factual allegations are true. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). I must construe McBride's factual allegations in a light most favorable to him and draw all reasonable inferences in his favor. Id.

**BACKGROUND**

On January 5, 1998, Sheriff Joe Bowdich[1] hired Edward T. McBride as a "lateral transfer" from the University of New Mexico Police Department ("UNMPD"). McBride was hired to work at the Bernalillo County Sheriff's Department[2] with the rank of Deputy First Class. McBride had held the rank of Senior Sergeant at UNMPD.

Because of McBride's extensive background and experience in law enforcement, the Defendants did not require McBride to attend the BCSD's law enforcement training academy. He did, however, have to complete the BCSD's Field Training Officer Program, which is normally a

---

[1] The parties agree that Sheriff Bowdich is the duly elected Sheriff of Bernalillo County and is a public official charged with setting policy and procedures and hiring employees of the BCSD. See Defendant's Reply at 4.
[2] The BCSD is a department within the County of Bernalillo, which is itself a "governmental entity" and a "political subdivision" of the State of New Mexico as those terms are defined in the NMTCA and the ADEA, respectively. See NMSA 1978, § 41-4-3; 29 U.S.C. § 630.

twelve-week program. McBride alleges that he was one of only three candidates selected by the BCSD for entry into its "lateral hiring program" out of an applicant pool of approximately 1,300.[3]

McBride and the other two candidates chosen for entry into the BCSD's lateral hiring program were informed that each would be assigned to three Field Training Officers ("FTOs") for training during the course of the 12-week training program. In fact, McBride was assigned to a total of eight FTOs, whereas each of the other two candidates was assigned to only two FTOs.

On or about February 23, 1998, McBride was ordered to appear before a Field Training Officer investigatory board to respond to allegations by his FTOs that he was prejudiced against Hispanics. At this investigatory board hearing, McBride's FTO program was extended an additional six weeks beyond the original twelve weeks due at least in part to his FTOs' allegations.

On April 9, 1998, McBride was ordered to appear before another FTO investigatory board. McBride was called before the board on this occasion to respond to allegations by his FTOs that he was prejudiced against women. At this board meeting, McBride's FTOs made additional allegations that his job performance was poor. As a result of this meeting, the Defendants terminated McBride's employment effective April 14, 1998.

On September 11, 1998, McBride filed a Complaint which initiated this action seeking redress in four separate counts. First, McBride alleges the Defendants violated the New Mexico Peace Officer's Employer-Employee Relations Act, §§ 29-14-1 to 29-14-11 NMSA 1978, when they terminated his employment through the FTO board meetings. Second, McBride alleges the Defendants violated the ADEA because they terminated his employment in part due to his age.

---

[3] The other two candidates McBride refers to in his Complaint are Harry Landis and Lawrence Tafoya. McBride, who was born on March 3, 1950, lists their dates of birth as January 15, 1957 and April 25, 1970, respectively. McBride has included this information in his Complaint because he alleges that he was fired in part due to his age.

3

Third, McBride alleges the Defendants maintained a hostile work environment by permitting his FTOs to bombard him with belittling, disparaging, and malicious comments. And fourth, McBride alleges he suffered severe emotional distress because of the Defendants' intentional and malicious conduct. McBride seeks, inter alia, compensatory damages, punitive damages and interest; reinstatement as a non-probationary Deputy First Class at the BCSD; costs; and attorney's fees.

The Defendants deny McBride's allegations and assert that their decision to terminate his employment with the BCSD was based on legitimate, non-discriminatory business reasons. The Defendants argue, however, that even if McBride's factual allegations are assumed to be true, he still is not entitled to the relief he seeks.

First, the Defendants assert that McBride's state law tort claims are barred by the doctrine of sovereign immunity. Second, the Defendants argue that even if McBride could demonstrate that immunity has been waived, the NMTCA bars his claims for punitive damages and interest. Third, the Defendants assert that McBride's claims for compensatory damages, punitive damages and interest under the ADEA are statutorily barred. Fourth, the Defendants contend that BCSD is not a properly named defendant in this lawsuit because it was not McBride's "employer" as defined in the ADEA nor is it a separate "governmental entity" as defined by the NMTCA. And fifth, the Defendants argue that Sheriff Bowdich is not a properly named individual defendant in McBride's ADEA claim because he was not McBride's "employer" as defined by the ADEA.

## DISCUSSION

### I. THE DEFENDANTS' MOTION TO DISMISS McBRIDE'S STATE LAW TORT CLAIMS FOR FAILURE TO STATE AN ACTIONABLE CLAIM

#### A. *Sovereign Immunity has not been waived for state law tort claims*

The Defendants move under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Counts I, III and IV of McBride's Complaint for failure to state a claim upon which relief can be

4

granted. The Defendants contend that McBride's state law tort claims of wrongful termination, hostile work environment and intentional infliction of emotional distress are barred by sovereign immunity. The State of New Mexico, as a sovereign, cannot be sued in any court without its consent. See Cobos v. Dona Ana County Housing Authority, 970 P.2d 1143, 1144-45 1998-NMSC-049 (N.M. Dec 03, 1998) (NO. 23,288). The State of New Mexico's waiver of immunity from tort liability cannot be implied but must be unequivocally expressed in the New Mexico Tort Claims Act. Id.

The NMTCA provides governmental entities and public employees acting in their official capacities with immunity from all tort liability except for specifically enumerated acts. See NMSA 1978, §§ 41-4-4; Abalos v. Bernalillo County Dist. Attorney's Office, 105 N.M. 554, 557, 734 P.2d 794, 797 (Ct. App. 1987). Section 41-4-12 of the Act sets out the applicable waiver of immunity for the acts or omissions of police officers. This section provides:

> The immunity granted pursuant to Subsection A of Section 41-4-4 NMSA 1978 does not apply to liability for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties.

NMSA § 41-4-12.

Thus, in order for McBride to state a tort claim under the waiver of immunity set forth in NMSA 1978, § 41-4-12, he must satisfy two requirements. First, McBride must demonstrate that the Defendants were police officers acting within the scope of their duties. Second, McBride must show that his injuries arose out of either a tort enumerated in NMSA 1978, § 41-4-12 or a deprivation of a right secured by law. See Weinstein v. City of Santa Fe, 121 N.M. 646, 649, 916 P.2d 1313, 1315 (N.M. 1996). Conversely, if McBride's allegations do not fall within one of the

5

NMTCA's express waivers of sovereign immunity, he can state a claim against the tortfeasors in their individual capacities but only if their actions were committed outside of the scope of their duties.[4]

1.  **Wrongful Termination**

In Count I of his Complaint, McBride contends that the Defendants wrongfully terminated his employment because, inter alia, they forced him to submit to two FTO board interrogations that were conducted "in violation of the New Mexico Peace Officer's Employer-Employee Relations Act." See Pltf. Compl. at 4. McBride claims that the FTO board members violated his rights under the NMPOA when they allegedly "acted in collusion to discriminate and intentionally harass" him in an effort to force him to resign. Id. at 3-4. McBride also claims that his NMPOA rights were violated because despite repeated requests, he has "not received copies of the taped FTO Board proceedings." See Pltf. Ex. A at 2.

The Defendants respond that, assuming McBride's factual allegations are true and that the FTO board members were acting within the scope of their duties, McBride's claim must still fail because the NMTCA has not specifically waived the Defendants' immunity for the acts complained of. See Def. Reply at 4-5. I disagree.

As mentioned above, McBride can state a claim against the Defendants even if his allegations do not fall within one of the NMTCA's explicit waivers. He can do so by showing that his injuries "arose out of. . .a deprivation of a right secured by law." See, e.g., Weinstein v. City of Santa Fe,

---

[4] I do not reach the issue of whether the FTOs and/or the FTO board members committed any torts while acting outside the scope of their duties. Assuming, however, that the FTOs and the board members were not acting in the scope of their duties for any of the alleged torts, I conclude that none of the **named** Defendants are amenable to suit in their individual capacities because McBride does not allege that they personally committed the tortious acts alleged in his Complaint.

6

121 N.M. at 649, 916 P.2d at 1316 (N.M. 1996); California First Bank v. State, 111 N.M. 64, 66, 801 P.2d 646, 648 (N.M. 1990). McBride has stated a valid claim by making factual averments which, if true, support his contention that the FTO board that recommended his discharge may have violated the NMPOA.

The New Mexico legislature promulgated the NMPOA in order to "prescribe certain rights for peace officers, *particularly* when they are placed under investigation by their employer." NMSA 1978, § 29-14-2(B) (emphasis added). Section 29-14-4 sets forth the requirements that must be adhered to "when any peace officer is under investigation by his employer for alleged actions that could result in administrative sanctions being leveled against the officer." NMSA 1978, § 29-14-4.

Section 29-14-4, which sets out specific duties of police officers, creates a private right for peace officers like McBride who must submit to FTO board investigations upon request. See California First Bank, 111 N.M. at 71-73, 801 P.2d at 653-55. A violation of this private right can serve as the foundation for a cause of action under § 41-4-12. Id. at 74-75, 656-57.

McBride has made at least three allegations in his Complaint which, if true, support his claim that the FTO board members who recommended his discharge failed to adhere to the NMPOA's procedural requirements. See Pltf. Compl. at 2-4.

First, McBride alleges that on or about February 23, 1998, the Defendants ordered him to appear before an FTO investigatory board that was comprised of his "FTOs, his Lieutenant and [his] Captain" to respond to allegations that he is prejudiced against Hispanics. See Pltf. Compl. at 3. McBride claims that even though these allegations were unfounded, his FTO program was extended beyond its original length in an effort to force him to resign. Id. I infer from these averments that McBride is accusing the Defendants of having violated NMPOA § 29-14-4(D)(4). Section 29-14-4(D)(4) provides that during any interrogation session, "there shall not be more than two

7

interrogators at any given time." If McBride was interrogated by more than two board members at one given time, then this section of the NMPOA may have been violated.

Second, McBride alleges that on April 9, 1998, the Defendants ordered him to appear before another FTO board to respond to allegations that he is prejudiced against women. See Pltf. Compl. at 3. McBride claims that at the board meeting additional allegations of poor job performance were leveled against him. McBride alleges that as a result of this board meeting the Defendants terminated his employment effective April 14, 1998. Id. By these averments McBride appears to accuse the Defendants of violating NMPOA § 29-14-4(C)(2), which provides that prior to the commencement of any interrogation session, "an officer shall be informed of the nature of the investigation. . .." If McBride was not informed beforehand that his level of job performance was to be addressed at the FTO board meeting, then this section of the NMPOA may have been violated.

Third, McBride alleges that despite repeated requests he has not received copies of the taped FTO board meetings. See Pltf. Ex. A at 2. If that allegation is true then NMPOA § 29-14-4(F) may have been violated. Section 29-14-4(F) requires that "an accurate copy of the transcript or tape [of the board meeting] shall be provided to the officer. . .upon his written request. . ."

In sum, McBride has cited a statute, the NMPOA, that provides a cause of action when the rights and duties created by it are breached and has alleged facts which, if true, could entitle him to relief. Accordingly, the Defendants' Rule 12(b)(6) motion to dismiss McBride's state law tort claim for wrongful discharge should be **DENIED**.

2. **Hostile Work Environment**

In Count III of his Complaint, McBride alleges that his FTOs and superiors created a hostile working environment by bombarding him with "belittling, disparaging, and malicious comments..."

8

See Pltf. Compl. at 4. McBride claims that this form of harassment was intentional and done in "blatant disregard to common decency." Id. at 5.

The Defendants contend that McBride has failed to state an actionable claim in Count III because no provision of the NMTCA, nor any case law interpreting the NMTCA, waives state sovereign immunity for an alleged hostile work environment. The Defendants are correct.

As the Supreme Court of New Mexico stated in Weinstein v. City of Santa Fe, the NMTCA "waives immunity for three types of claims: (1) the commission of an enumerated common-law tort; (2) the deprivation of a statutory right; and (3) the deprivation of a constitutional right." See Weinstein v. City of Santa Fe, 121 N.M. at 649, 916 P.2d at 1316.

McBride does not allege that his claim for damages under the theory of "hostile work environment" is recognized as a separate tort in the jurisprudence of New Mexico or that it falls within one or more of the three categories of waivers of tort liability described in Weinstein.

First, Section 41-4-12 waives liability for the "enumerated" common-law torts of "assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, [and] defamation of character... ." NMSA 1978, § 41-4-12. That Section does not mention a tort of "hostile work environment," so McBride's claim does not fall within Weinstein's first waiver category. Second, there is no New Mexico or federal statute that creates a private right to be free from a "hostile work environment." Thus, McBride's claim does not fall within Weinstein's second waiver category. And third, the constitutions of the United States and the State of New Mexico do not create a private right to be free from a "hostile work environment," so McBride's claim does not fall within Weinstein's third category either.

Accordingly, the Defendants 12(b)(6) motion to dismiss McBride's state law tort claim for hostile work environment should be **GRANTED**.

3. **Intentional Infliction of Emotional Distress**

In Count IV of his Complaint, McBride alleges that he "suffered extreme humiliation and severe emotional distress" because of the Defendants' "malicious course of conduct." See Pltf. Compl. at 5. The Defendants contend that McBride has failed to state an actionable claim because no provision of the NMTCA, nor any case law interpreting the NMTCA, waives state sovereign immunity for the tort of intentional infliction of emotional distress.

In Romero v. Otero, 678 F.Supp. 1535, 1540 (D.N.M. 1987), Judge Burciaga held that the NMTCA does not waive "the immunity of law enforcement officers for [intentional infliction of emotional distress] standing alone as a common law tort." Judge Burciaga stated in dicta, however, that "[d]amages for emotional distress. . .may be recoverable as damages for 'personal injury' resulting from one of [Section 41-4-12's] *enumerated acts*." Id. (emphasis added).

In this case, McBride can request damages for emotional distress proximately caused by the Defendants having violated either the NMPOA or the ADEA. In sum, McBride's claim of intentional infliction of emotional distress is invalid as a stand alone tort; however, emotional distress is an element of damages recoverable in connection with Count I ("Wrongful Termination") and Count II ("Age Discrimination"). Accordingly, the Defendants' motion to dismiss McBride's separate tort claim of intentional infliction of emotional distress should be **GRANTED.**

## B. *Punitive Damages and Prejudgment Interest*

The Defendants contend that even assuming that McBride could demonstrate that immunity has been waived for one or more of his state law tort claims, the NMTCA bars his claims for punitive damages and prejudgment interest. See Def. Memo. at 4. In support of their contention, the Defendants cite to NMSA 1978, § 41-4-19(B), which reads, in part:

10

> No judgment against a governmental entity or public employee for any tort for which immunity has been waived under the Tort Claims Act shall include an award for exemplary or punitive damages or for interest prior to judgment.

This statute clearly excludes an award of punitive damages or prejudgment interest against state governmental defendants. Accordingly, the Defendants' 12(b)(6) motion to dismiss McBride's claim for punitive damages and pre-judgment interest under the NMTCA should be **GRANTED.**

## C. *Postjudgment Interest*

The Defendants contend that the NMTCA also bars McBride's state law claims for post-judgment interest. See Def. Memo. at 4. The Defendants acknowledge that NMSA 1978, § 56-8-4(A) authorizes postjudgment interest "on judgments and decrees for the payment of money from entry." The Defendants argue, however, that this subsection does not apply to them. In support of their contention, the Defendants cite to NMSA 1978, § 56-8-4(D), which states, in relevant part:

> The state and its political subdivisions are exempt from the provisions of this section [Section 56-8-4] except as otherwise provided by statute or common law.

The New Mexico Supreme Court has interpreted § 56-8-4(D) to mean that the Defendants are immune from liability for postjudgment interest that is awardable under NMSA 1978, § 56-8-4(A). See Trujillo v. City of Albuquerque, 125 N.M. 721, 730, 965 P.2d 305, 317, 1998-NMSC-031 (N.M. 1998) ("post-judgment interest is prohibited on recoveries from the state and its political subdivisions"). Accordingly, the Defendants' 12(b)(6) motion to dismiss McBride's claim for postjudgment interest under the NMTCA should be **GRANTED.**

## D. *Claim against BCSD*

The Defendants move to dismiss McBride's state law tort claims against the BCSD for failure to state a claim because the BCSD is not a "governmental entity" as defined by the NMTCA.[5]

---

[5] Only "governmental entities" and "public employees" are amenable to suit under the NMTCA. See NMSA 1978, §§ 41-4-1 through 41-4-27. "Political subdivisions" are deemed to be governmental entities under the Act. See NMSA 1978, § 41-4-3(B).

11

The Defendants concede that the County of Bernalillo is subject to suit under the Act because it is a "political subdivision" of the State of New Mexico. See Def. Memo. at 10; NMSA 1978, § 41-4-3. The Defendants argue, however, that the BCSD is not a "political subdivision" of the State of New Mexico. Instead, they claim that the BCSD is but an "operating unit" of the County of Bernalillo.

In State of New Mexico v. Ellis, 120 N.M. 709, 905 P.2d 747 (Ct. App. 1995), the New Mexico Court of Appeals concluded that the police department of the City of Clovis ("City") is a political subdivision of the State of New Mexico. The court first stated that the City, as a municipal corporation, is a political subdivision of the state. Id. at 711, (citing City of Albuquerque v. Campbell, 68 N.M. 75, 79, 358 P.2d 698, 701 (N.M. 1960)). The court then reasoned that because the police department is a part of the City it, too, is a subdivision of the state. The Defendants have not cited, and I have not found, a case that holds to the contrary. Hence, the Defendants' motion to dismiss McBride's ADEA claim against the BCSD should be **DENIED**.

## II  THE DEFENDANTS' MOTION TO DISMISS McBRIDE'S ADEA CLAIM FOR FAILURE TO STATE AN ACTIONABLE CLAIM

The Defendants move under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss McBride's claims for compensatory damages, punitive damages and interest under the ADEA for failure to state a claim upon which relief can be granted. The Defendants assert that these remedies are unavailable in an ADEA action. The Defendants also move to dismiss McBride's ADEA claims against the BCSD and individual defendant Sheriff Bowdich because neither BCSD nor Sheriff Bowdich was McBride's "employer" as that term is defined in the ADEA.[6]

### A. *Compensatory Damages*

McBride's Complaint states that he seeks "compensatory damages" against the Defendants

---

[6] Under 29 U.S.C. § 623(a) of the ADEA, only "employers" can be liable to an "employees" for damages caused by age discrimination.

12

in the form of unspecified actual damages, future wages and emotional distress. The Defendants argue that McBride is not entitled to compensatory damages because the ADEA does not expressly allow them and the Tenth Circuit's interpretation of the ADEA prohibits such damages.

In Perrell v. FinanceAmerica, 726 F.2d 654, 657 (10th Cir. 1984), the Tenth Circuit held that the district court erred when it charged the jury to determine "the allowance of elements of damage other than those specifically set out in the ADEA." The court stated:

> To date, eight of our sister circuits have been presented this issue in varying nuances. However, every time the issue of permissible scope of damages has been addressed, each circuit court has held that the ADEA is limited to the damages specifically enumerated.

Id. at 657.

The holding in Perrell begs the question of what damages *are* specifically provided for in the ADEA? According to the ADEA:

> Amounts owing to a person as a result of a violation of this chapter [Chapter 14] shall be deemed to be unpaid minimum wages or unpaid overtime compensation: *Provided, That* liquidated damages shall be payable only in cases of willful violations of this chapter. In any action brought to enforce this chapter the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including without limitation judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation under this section [Section 626].

29 U.S.C. § 626(b).

Perrell indicates that McBride's request for "compensatory damages" against the Defendants in the form of unspecified actual damages, future wages and emotional distress is barred by the ADEA. The ADEA permits but one form of "compensatory" relief--unpaid minimum wages or unpaid overtime compensation--neither of which McBride seeks. Hence, the Defendants' motion to dismiss McBride's claim for compensatory damages under the ADEA should be **GRANTED.**

13

*B. Punitive Damages*

The Defendants move to dismiss McBride's claim for punitive damages under the ADEA because the ADEA does not explicitly authorize awards of punitive damages, and the Tenth Circuit has interpreted the ADEA to disallow them. Def. Memo. at 4.

In Bruno v. Western Electric Co., 829 F.2d 957 (10th Cir. 1987), the Tenth Circuit held that punitive damages are not recoverable in an ADEA case for three reasons. First, Congress did not include punitive damages among those specifically recoverable. Second, Congress provided that in cases of willful violations of the ADEA the court would order liquidated damages, which serve the same purpose as punitive damages, which if also awarded would effectively grant the plaintiff a double recovery. And third, precluding punitive damages facilitates the reconciliation process carried out by the EEOC under the ADEA. In agency proceedings, punitive damages are unavailable; thus, an ADEA plaintiff who may be able to recover punitive damages in a court action would be less inclined to seek reconciliation at the agency level. If punitive damages are not available, in court, plaintiffs will more likely participate in agency reconciliation efforts.

In light of Bruno and Perrell, McBride's claim for punitive damages under the ADEA is barred, and the Defendants' motion to dismiss that claim should be **GRANTED.**

*C. Interest*

The Defendants move to dismiss McBride's claim for prejudgment and postjudgment interest under the ADEA. The Defendants argue that the ADEA does not allow interest on an ADEA judgment and that applicable Tenth Circuit cases prohibit interest. Def. Memo. at 4. The Defendants are correct that McBride cannot recover prejudgment interest if he prevails on the merits of his case. However, the Defendants are mistaken that McBride is also precluded from recovering postjudgment interest.

14

## 1. Prejudgment interest

In <u>Buffington v. Phelps Dodge Mining Co.</u>, 800 F.Supp 951, 952 (D.N.M. 1992), Judge Bratton held that "pre-judgment interest is not available in any ADEA case." <u>See Buffington</u>, 800 F.Supp at 952. Judge Bratton based his decision on two factors. First, the ADEA does not expressly mention prejudgment interest. Second, the purpose of prejudgment interest is to compensate a plaintiff for delay, a purpose which Congress provided for via liquidated damages. Thus, the Defendants' motion to dismiss McBride's claim for prejudgment interest should be **GRANTED.**

## 2. Postjudgment interest

The issue of whether a plaintiff may receive postjudgment interest in an ADEA case is one of first impression in this Circuit. The Defendants assert that although this issue was "not discussed in Judge Bratton's [<u>Buffington</u>] opinion, nor in any Tenth Circuit or New Mexico District Court opinion located, presumably the reasoning of <u>Perrell</u> and <u>Buffington</u> applies to [defeat] post-judgment interest awards." <u>Def. Motion</u> at 5. I disagree.

In <u>Perrell</u>, the defendant-appellant "claimed that the district court erred in allowing the awarding of 'compensatory damages'. . .in an ADEA case." <u>See Perrell</u>, 726 F.2d at 654. The district court had instructed the jury that it could award the plaintiff compensatory damages for "incidental expenses caused by the curtailment of his employment," as well as for "pain and suffering and humiliation which resulted from [his] termination." <u>Id.</u> at 656.

In <u>Perrell</u>, the Tenth Circuit held that the district court had erred by allowing the jury to consider damages "other than those specifically set out in the ADEA." <u>Id</u>. Read broadly, <u>Perrell</u> indicates that a court must always limit its "remedies instruction" to the jury to unpaid minimum wages, unpaid overtime compensation and liquidated damages because those are the only remedies *specifically* provided for in the ADEA. <u>Perrell</u> also indicates that if a court were to ever look beyond

15

the express language of the ADEA to determine whether a particular remedy is available in an ADEA case—and consider, for example, the *purpose* that might be served by making available a particular remedy that is not expressly mentioned in the ADEA—it would necessarily commit error.

The opinion in Bruno v. Western Electric Co. seems to limit, somewhat, the very broad language of Perrell. The Bruno court concluded that punitive damages are not available under the ADEA only after it first decided that the *purpose* for permitting punitive damages had already been served by allowing liquidated damages. This implies that if the Bruno court had felt the purpose of punitive damages had not already been addressed through another form of relief, it would have considered allowing punitive damages even though they are not mentioned in the ADEA. The Bruno court's "functional" approach to awarding damages under the ADEA has wended its way to the district court level. See, e.g., Buffington v. Phelps Dodge Mining Co., 800 F.Supp. at 951.

In Buffington, Judge Bratton dismissed the plaintiff's motion for prejudgment interest on two grounds. Judge Bratton first found that the language of the ADEA does not provide for prejudgment interest. This, however, did not end Judge Bratton's analysis. Instead, Judge Bratton went on to observe that the underlying *purpose* for awarding prejudgment interest had already been satisfied by the ADEA's liquidated damages provision.

Buffington and Bruno suggest a two-pronged analysis for determining whether McBride's motion for postjudgment interest should be granted. First, if the ADEA expressly authorizes postjudgment interest it should be awarded as a matter of course. Second, assuming that the ADEA does not expressly provide for postjudgment interest the purpose that would be served by awarding postjudgment interest should be considered. If Congress established another remedy to fulfill that purpose, or if Congress intended to provide no such remedy altogether, then it must be denied. Conversely, if awarding postjudgment interest would neither duplicate any other remedy provided

16

by the ADEA nor conflict with Congress' intent to deny such relief, postjudgment interest should be awarded.

### a) the ADEA does not specifically authorize postjudgment interest

The ADEA does not expressly authorize postjudgment interest. Hence, I must consider whether Congress provided some other form of relief that fulfills the same purpose. I conclude that Congress did not provide an alternative form of relief to postjudgment interest.

The ADEA has a "two-tiered liability scheme." Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 127-28, 105 S.Ct. 613, 624-25 (1985). Under the first tier, a plaintiff is entitled to "unpaid minimum wages and unpaid overtime compensation." Id.; 29 U.S.C. § 626(b). These monetary damages, which can be awarded whenever the ADEA is violated, are economic damages; they serve to compensate a plaintiff for services rendered. Under the second tier, a plaintiff is entitled to liquidated damages, but only if his employer "willfully" violated the ADEA. Id. These damages are punitive in nature; they serve to punish a defendant for knowingly or recklessly violating the ADEA's prohibition on age discrimination.

### b) Congress did not establish a remedy that overlaps with postjudgment interest

Postjudgment interest does not fall neatly under either tier. Postjudgment interest is not an expense of litigation; rather, it is a means of compensating the prevailing party for the loss of use of money to which it is entitled. See Preston v. Thompson, 565 F.Supp. 294, 302 (N.D.Ill. 1983). Postjudgment interest does not compensate a plaintiff for salary arrearages nor does it penalize the defendant for losing a lawsuit on the merits or for delaying a decree of final judgment. See Central States Southeast and Southwest Areas Pension Fund v. Hitchings Trucking, Inc., 492 F.Supp. 906 (E.D.Mich. 1980). Instead, postjudgment interest compensates the successful plaintiff for being

17

deprived of the "time-value" of money from the date between the ascertainment of the damage and the payment by the defendant.

c) **Congress did not intend to deny postjudgment interest**

An award of postjudgment interest on a money judgment recovered in federal court is governed by 28 U.S.C. § 1961(a). See, e.g., Fuchs v. Lifetime Doors, Inc., 939 F.2d 1275, 1280 (5th Cir. 1991); Travelers Ins. Co. v. Transport Ins. Co., 846 F.2d 1048, 1053-54 (7th Cir. 1988); Lightfoot v. Union Carbide Corp., 901 F.Supp. 166, 168 (S.D.N.Y. 1995). Section 1961(a) provides, in relevant part:

> Interest shall be allowed on any money judgment in a civil case recovered in a district court. . . .Such interest shall be calculated from the date of the entry of the judgment...

Significantly, every court that has considered whether postjudgment interest is available in an ADEA case has concluded that it is.[7] Accordingly, the Defendants' motion to dismiss McBride's claim for postjudgment interest for failure to state an actionable claim should be **DENIED**.

## D. *Claims against the BCSD and Sheriff Bowdich, individually*

The Defendants move to dismiss McBride's ADEA claims against the BCSD and Sheriff Bowdich, in his individual capacity, because neither one of them was McBride's "employer" as that term is defined in the ADEA. In support of their motion, the Defendants cite 29 U.S.C. § 630 of the ADEA, which defines "person" and "employer":

---

[7] See, e.g., Weaver v. Amoco Production Co., 66 F.3d 85 (5th Cir. 1995); Mangold v. California Public Utilities Com'n, 67 F.3d 1470 (9th Cir. 1995); Becker v. ARCO Chemical Co., 15 F.Supp.2d 621 (E.D.Pa. 1998); Mitchell v. Sisters of Charity of Incarnate Word, 924 F.Supp. 793 (S.D.Tex. 1996) Buckley v. Reynolds Metals Co., 690 F.Supp. 211 (S.D.N.Y. 1988); Burns v. C.I.R., T.C. Memo. 1994-284, 1994 WL 273928 (U.S.Tax Ct. 1994); Lefevre v. Harrison Group, Inc., 1996 WL 383120 (E.D.Pa., Jul 08, 1996); Ryther v. KARE 11, 864 F.Supp. 1525 (D.Minn. 1994); Rogers v. Fansteel, Inc., 533 F.Supp. 100 (E.D.Mich. 1981).

18

> For the purposes of this chapter [Chapter 14]—
>
> (a) The term "person" means one or more individuals, partnerships, associations, labor organizations, corporations, business trusts, legal representatives, or...any organized groups of persons.
>
> (b) The term "employer" means a person engaged in an industry affecting commerce who has twenty or more employees...The term also means (1) any agent of such a person, and (2) a State or political subdivision of a State and any agency or instrumentality of a State or a political subdivision of a State, and any interstate agency, but such term does not include the United States, or a corporation wholly owned by the...United States.

### 1. The BCSD

The Defendants once again argue that the BCSD is not amenable to suit as McBride's employer because it is not a "political subdivision" of the State of New Mexico. See Def. Memo. at 11. For the same reasons discussed previously, the Defendants' motion to dismiss on this ground McBride's ADEA claim against the BCSD should be **DENIED**.

### 2. Sheriff Joe Bowdich, in his individual capacity

McBride claims that Sheriff Bowdich is a properly named defendant in this action because Sheriff Bowdich hired McBride and he was, therefore, McBride's "employer." See Pltf. Compl. at 1. The Defendants argue that Sheriff Bowdich, as an "agent" of the BCSD, is not an "employer" under the ADEA. See Def. Reply at 2-3. The Defendants are correct.

In Ditch v. Board of County Commissioners, 650 F.Supp. 1245, 1251 (D.Kan.1986), Judge Saffels explained why state agents and officials of political subdivisions cannot also be employers under the ADEA:

> In enacting the ADEA, Congress explicitly excluded states and their political subdivisions from the definition of person, opting rather to include them as a separate and distinct category of employer. Within one sentence, Congress established the separate and distinct liability of (1) agents of persons and (2) states and political subdivisions. Congress made no provision for agents of states and political subdivisions. It would have only required the insertion of the short phrase "and their

19

agents" in 29 U.S.C. § 630(b)(2) to express Congress' intent to hold individuals such as these defendants liable for age discrimination.

I am persuaded by Judge Saffels' reasoning that individual agents like Sheriff Bowdich are insulated from liability under the ADEA.[8] Thus, the Defendants' motion to dismiss McBride's ADEA claim against Sheriff Bowdich, in his individual capacity, should be **GRANTED**.

**IT IS THEREFORE ORDERED THAT:**

1. Defendants' motion to dismiss Count I (wrongful termination) of Plaintiff's Complaint is **DENIED**;

2. Defendants' motion to dismiss Count III (hostile work environment) and Count IV (intentional infliction of emotional distress) of Plaintiff's Complaint is **GRANTED**;

3. Defendants' motion to dismiss Plaintiff's claims for compensatory damages, punitive damages and prejudgment interest under Count II (ADEA) of his Complaint is **GRANTED**;

4. Defendants' motion to dismiss Plaintiff's claim for postjudgment interest under Count II (ADEA) of his Complaint is **DENIED**;

5. Defendants' motion to dismiss Plaintiff's Complaint against the BCSD is **DENIED**; and

6. Defendants' motion to dismiss Count II (ADEA) of Plaintiff's Complaint against Sheriff Bowdich, in his individual capacity, is **GRANTED**.

UNITED STATES DISTRICT JUDGE

---

[8] The Ditch court's analysis has been relied upon extensively. See, e.g., Swanson v. Department of Health, State of Colo., 773 F.Supp. 255, 258 (D.Colo. 1991) ("ADEA plaintiffs cannot sue an individual state official because such persons are not "employers" as defined by the Act."); Court v. Administrative Office of Third Judicial Dist. Court, Salt Lake County, 764 F.Supp. 168, 169 (D.Utah 1991); Price v. County of Erie, 654 F.Supp. 1206, 1207 (W.D.N.Y.1987) ("A fair reading of the statute's language is that agents of a state's instrumentalities...are not employers within the contours of the ADEA and may not be sued individually.").